UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GAIL FRESE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-103-JAR |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Gail Frese's application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, the decision of the Commissioner will be affirmed.

**I.    PROCEDURAL BACKGROUND**

On June 17, 2019, Plaintiff filed an application for DIB with an alleged disability onset date of March 5, 2017. (Tr. at 286-89, Doc. 20 at 1). Plaintiff claimed disability due to residual pain from back surgery, dizziness, and seizures, among other conditions. (*Id.* at 308). After her application was initially denied on September 25, 2019 (*Id.* at 225), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 231-32). On June 8, 2020, ALJ Henry DeWoskin held a hearing via telephone. (*Id.* at 187-213). Plaintiff was represented by counsel at

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should therefore be substituted for Andrew Saul as the Defendant in this suit.

1

the hearing, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

After considering the testimony and record evidence, the ALJ issued an unfavorable decision on June 29, 2020. (*Id.* at 169-185). On November 24, 2020, the Appeals Council of the Social Security Administration ("SSA") denied Plaintiff's request for review. (*Id*. at 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on January 26, 2021. (Doc. 1). The Commissioner filed an Answer on July 21, 2021. (Doc. 14). Plaintiff then filed a Brief in Support of the Complaint (Doc. 20) and the Commissioner filed a Brief in Support of the Answer (Doc. 26).

## II.     FACTS

This Court adopts Plaintiff's Statement of Uncontroverted Material Facts (Doc. 20-1) to the extent they are admitted by the Commissioner. (Doc. 26-1). These statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.    LEGAL STANDARD

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018). Substantial evidence is less than a preponderance but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citation omitted). The Court defers heavily to the findings and conclusions of the SSA. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citation omitted). But the Court must also "take into account record evidence that fairly detracts from the ALJ's decision." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (citation omitted). This

Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided differently. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). In other words, this Court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

Under the SSA regulations, an individual is disabled if they have an inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The SSA has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the regulations ("Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history, and the process is complete.

If the claimant does not have an impairment which meets or equals a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P,

3

App. 1, § 12.00; 20 C.F.R. §§ 404.945, 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. *See generally* S.S.R. 96–8p, 1996 WL 374184, at *2 (July 2, 1996). At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she is not disabled. If not, the ALJ proceeds to step five to determine whether the claimant is able to make an adjustment to other work in light of his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform jobs existing in significant numbers within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004).

**IV.     DECISION OF THE ALJ**

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity between her alleged disability onset date (March 5, 2017) and date last insured (March 31, 2018). (Tr. at 174). At step two, the ALJ concluded that Plaintiff's degenerative disc disease of the lumbar spine constituted a severe impairment which significantly limited Plaintiff's ability to perform basic work activities. (*Id.*). The ALJ further acknowledged that Plaintiff potentially suffered from liver disease in the form of Hepatitis C, hyponatremia, dizziness, and a history of seizures but

4

determined that these impairments were either non-severe or lacking objective support in the medical record. (*Id.* at 174-75). At step three, the ALJ found that Plaintiff did not have any impairment or combination of impairments through the date last insured which met or equaled a Listing. (*Id.* at 175). Plaintiff has not challenged these conclusions in her brief before this Court.

"After careful consideration of the entire record," the ALJ assessed Plaintiff's RFC as only permitting sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations:

> [Plaintiff] can lift up to 10 pounds occasionally. She can stand/walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. She could occasionally climb ramps or stairs, but could never climb ladders, ropes, or scaffolds. She could never balance as defined by the Dictionary of Occupational Titles. She could occasionally stoop, kneel, and crouch, but could never crawl. She should have avoided exposure to excessive vibration. She should have avoided exposure to operational control of moving machinery, unprotected heights, and exposure to hazardous machinery. (*Id.*).

Plaintiff worked as an Accounting Manager from 2002 through at least March 2012. The ALJ determined that this qualified as past relevant work. (*Id.* at 179). At step four, after "comparing the [RFC] with the physical demands of this past relevant work," the ALJ determined that Plaintiff "was able to perform it as generally performed before her date last insured." (*Id.* at 180). The ALJ relied on testimony from the VE, whose testimony the ALJ deemed to be consistent with the Dictionary of Occupational Titles ("DOT").[2] Proceeding in the alternative, the ALJ moved on to step five and noted there were other jobs existing in significant numbers in the national economy which Plaintiff could perform considering her age, education, work experience, and RFC. (*Id.*). Again relying on the VE and DOT, the ALJ stated Plaintiff could perform the jobs of Document

---

[2] The VE testified that, based on the RFC, Plaintiff could perform her past relevant work "[a]s it's usually performed, but not as [Plaintiff] performed it" because Plaintiff apparently performed the job at a medium level. (Tr. at 208-09). Plaintiff has not challenged whether she can perform past relevant work or obtain other jobs existing in significant numbers in the national economy based on the RFC. Instead, Plaintiff argues that the RFC is not supported by some medical evidence and the ALJ's decision lacks a proper pain evaluation. (Doc. 20).

Preparer, Addresser, and Information Clerk. (*Id.* at 181). Thus, the ALJ found Plaintiff was not disabled. (*Id.*).

## V.   PLAINTIFF'S MEDICAL RECORDS AND PERSONAL HISTORY

At the time of her hearing, Plaintiff was 49 years old and unemployed. (*Id.* at 194-97). She held a driver's license and drove "sometimes." (*Id.* at 196). She had trouble sleeping, could not do laundry, and often required assistance from family members. (*Id.* at 201-03). Plaintiff informed her medical providers that she could only perform basic household duties in "short spurts" before suffering acute pain and having to rest. (*Id.* at 417). Because Plaintiff declined to complete a Function Report, this Court lacks meaningful additional details regarding the nature of Plaintiff's home life and daily functioning. (*Id.* at 176).

The relevant medical records before this Court begin in February 2017, when Plaintiff presented to the Missouri Baptist Medical Center emergency room due to low back pain with radiation into her back and right leg. (*Id.* at 426; Doc. 20-1 at ¶ 1). Medical imaging revealed "bulging disk but no compression of canal or nerve roots." (*Id.* at 436). Plaintiff was discharged in satisfactory condition, prescribed pain medication, advised to rest, and scheduled for a follow-up appointment. (*Id.* at 436-37; Doc. 20-1 at ¶ 1). A few days later, Plaintiff had a follow-up visit where Dr. Madan of BJC Medical Group recommended rest and continued pain medication, as "nothing in the MRI suggested any surgical intervention." (*Id.* at 801-02; Doc. 20-1 at ¶ 2).

Plaintiff returned to the emergency room on March 1, 2017 with severe back pain. (*Id.* at 442; Doc. 20-1 at ¶ 3). Plaintiff developed a worsening fever and received intravenous antibiotics for treatment of staphylococcus aureus. (*Id.*). On March 5, 2017, Dr. Youkilis performed emergency surgery consisting of a L4-S1 laminectomy for drainage of an epidural abscess. (*Id.* at

372-74; Doc. 20-1 at ¶ 3). Plaintiff was discharged and classified as medically stable on March 13, 2017. (*Id.* at 443-44).

On March 21, 2017, Plaintiff had a follow-up appointment with Dr. Madan who noted that Plaintiff was undergoing home physical therapy and "able to mobilize without assistive device within her home." (*Id.* at 795). Dr. Madan also identified tenderness in the lumbar spine and mild pain with motion. (*Id.* at 799; Doc. 20-1 at ¶ 4). Plaintiff had a follow-up visit with her surgeon, Dr. Youkilis, on April 3, 2017. (*Id.* at 383-85; Doc. 20-1 at ¶ 5). Plaintiff presented to this appointment with low back pain and persistent weakness in her left foot, though her "right-sided foot drop ha[d] gone away." (*Id.* at 383). Dr. Youkilis found that Plaintiff had difficulty with heel walking on the left but could do so on the right and "is able to walk bilaterally." (*Id.* at 384). Dr. Youkilis scheduled a follow-up MRI in three months.

Plaintiff returned to the emergency room on April 18, 2017 with severe back pain. (*Id.* at 528; Doc. 20-1 at ¶ 6). Plaintiff was described as having a "long complicated hospital course with various issues." (*Id.* at 528). Dr. Youkilis saw "no clear role for neurosurgical intervention" but agreed with a colleague's recommendation for a "CT-guided aspiration of the fluid collection in the right lower quadrant." (*Id.* at 379). Dr. Curry performed a L5-S1 disc space aspiration on April 20, 2017. (*Id.* at 591; Doc. 20-1 at ¶ 6). Plaintiff was discharged on April 26, 2017 with continued intravenous antibiotics. (*Id.* at 529). Plaintiff returned to the emergency room again on May 18, 2017 after having apparently injured her tailbone during a fall. (*Id.* at 597). She was discharged the same day in stable condition and provided pain medication. (*Id.* at 606-07; Doc. 20-1 at ¶ 7). Over the following months, Plaintiff had multiple follow-up appointments during which she continued to complain of lower back pain. (Doc. 20-1 at ¶¶ 8, 10-13). Plaintiff was repeatedly prescribed pain medication and physical therapy while also advised to exercise. (Tr. at 417-20).

The medical records indicate that Plaintiff "[a]dmitt[ed] she does not do the [physical therapy] exercises regularly." (*Id.* at 417).

On September 25, 2019, state agency medical consultant Dr. Gwartney completed a medical evaluation after reviewing Plaintiff's extensive medical records. Dr. Gwartney essentially found that Plaintiff had an improved condition following her procedure but appeared to suffer further complications after the last date insured. (*Id.* at 217-19). Dr. Gwartney ultimately concluded there was insufficient evidence to support a disability determination.

## VI. ANALYSIS

<u>Medical Evidence Supporting the RFC</u>

Plaintiff contends that the RFC is not supported by some medical evidence. An ALJ determines the RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). But an ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). The "burden of persuasion to prove disability and demonstrate RFC" remains with the claimant. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted).

The Court finds that the ALJ performed an extensive review of relevant evidence, including Plaintiff's substantial medical records, before determining Plaintiff was capable of sedentary work with certain limitations The ALJ carefully reviewed Plaintiff's objective medical findings,

8

including those stating Plaintiff was doing "remarkably well" after surgery and exhibiting "normal musculoskeletal range of motion upon physical examination." (Tr. at 177). The ALJ recognized that Plaintiff "exhibited weakness in her right leg in February of 2018," and that such impairment "would have reasonably limited [Plaintiff] to performing only a range of sedentary work activity." (*Id.* at 178). But the ALJ concluded that "longitudinal records" did not support additional limitations because Plaintiff did "remarkably well" post-surgery, frequently described her pain as moderate, and "exhibited nearly full lower extremity strength and negative straight leg raise test responses." (*Id.*).

While certain medical providers recommended more restrictive limitations than the RFC, the ALJ recognized such restrictions as "short-term limitations" and noted that providers frequently recommended that Plaintiff participate in a regular walking program and maintain an active lifestyle. (*Id.* at 179). *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) ("The ALJ paid particular attention to the fact that Eichelberger cancelled several physical therapy appointments and that no physician had imposed any work-related restrictions on her."). This analysis is consistent with the applicable definition of disability, which requires that the impairment can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.

Having performed its own review of the record, moreover, the Court finds substantial medical evidence which supports the RFC. First, Plaintiff's own physicians acknowledged her ability to perform sedentary work. In February 2017, Dr. Rush described Plaintiff's pain as "reasonably controlled" and imposed short-term restrictions including no lifting greater than 10 pounds and avoiding prolonged standing or walking. (*Id.* at 435-37). Plaintiff's RFC is consistent with such temporal limitations. In November 2018, Plaintiff visited her surgeon, Dr. Youkilis, and informed him she was considering seeking disability. Dr. Youkilis specifically found that he did

9

"not see an imaging finding or exam finding which would preclude [Plaintiff] from a job performing nonlabor type work." (*Id.* at 394). While this assessment occurred after the last date insured, it is consistent with medical records during the alleged disability period. In July 2017, Dr. Youkilis described Plaintiff as having "moderate low back pain" and emphasized the "importance of a regular walking program and maintaining an active lifestyle." (*Id.* at 381). Each of these assessments supports the RFC. *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (holding physical limitations in RFC were supported by orthopedic surgeon's examination).

Second, Plaintiff's providers frequently prescribed conservative treatment such as pain medication and physical therapy. (Tr. at 381, 417, 420, 606). *See Walker v. Colvin*, 124 F. Supp. 3d 918, 934 (E.D. Mo. 2018) ("An ALJ may consider a plaintiff's conservative course of treatment as indicative that [her] symptoms are not disabling."). Plaintiff, moreover, did not consistently perform her prescribed exercises (Tr. at 417), sometimes continued smoking and drinking against numerous providers' clear recommendations (*Id.* at 156, 427), and declined certain forms of pain management due to her fear of needles. (*Id.* at 401, 641). *See Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) ("[Plaintiff's] refusal to take pain medications, and his failure to seek conservative treatment options also cut against [his] credibility."); *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (acknowledging claimant's failure to attend physical therapy, stop smoking, and follow regular exercise plans).

Third, Plaintiff's medical providers frequently indicated that Plaintiff was recovering well from her procedures. In July 2017, during the alleged disability period, Plaintiff's surgeon described her as doing "remarkably well" and looking "like a different woman now compared to when she was in the hospital." (Tr. at 381, 617). Dr. Youkilis further stated he was "delighted" with Plaintiff's post-operative recovery and would only schedule additional visits on an as-needed

basis. (*Id.*). Plaintiff accurately notes that "doing well for the purposes of a treatment program has no *necessary relation* to a claimant's ability to work or to [claimant's] work-related functional capacity." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (emphasis added). In these circumstances, however, Plaintiff's rehabilitation bears clear relation to her work-related functional capacity considering her alleged disability is degenerative disc disease of the lumbar spine. Courts routinely consider whether a claimant improved with proper medical treatment. *See Voegtlin v. Colvin*, No. 4:11-CV-1980 HEA, 2014 WL 651378, at *5 (E.D. Mo. Feb. 19, 2014) (citation omitted); *see also Lopez v. Barnhart*, 108 F. App'x 421, 423 (8th Cir. 2004) (per curiam) (noting claimant's condition improved with treatment). In short, Plaintiff's significant improvement following surgery constitutes additional medical evidence supporting the RFC.

Finally, the ALJ relied on the opinion of Dr. Gwartney, the state agency medical consultant.[3] Dr. Gwartney performed a thorough review of Plaintiff's medical records and determined there was "insufficient evidence [with] which to establish restrictions or to establish disability" prior to the last date insured. (Tr. at 218). The ALJ described Dr. Gwartney's opinion as "persuasive" because he "supported his findings with a detailed narrative explanation that included specific citations to the evidence of record" and such findings "remain[ed] consistent with the evidence as a whole." (*Id.* at 179). The SSA regulations explicitly recognize that state agency medical consultants are "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); *see also Collins v. Kijakazi*, No. 6:20-CV-3237-MDH, 2021 WL 3909670, at *4 (W.D. Mo. Aug. 31, 2021) ("The new regulations require the ALJ to

---

[3] Because Plaintiff filed her claim for disability benefits after March 27, 2017, the ALJ was required to evaluate such evidence in accordance with 20 C.F.R. § 404.1520c. This regulation provides that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will evaluate the persuasiveness of such opinions with supportability and consistency with other evidence in the record being the most important factors. 20 C.F.R. § 404.1520c(a)(2).

consider the opinions of state agency medical consultants because they are highly qualified experts in Social Security disability evaluation.").

Plaintiff questions how the ALJ could reasonably identify the RFC when Dr. Gwartney lacked sufficient evidence to establish any restrictions. (Doc. 20 at 3-4). The Commissioner notes, and Defendant has not disputed, that the SSA could not obtain a Consultative Examination because Plaintiff did not apply for disability benefits until approximately 27 months after the last date insured. (Doc. 26 at 8 n.4). It is the duty of the claimant, moreover, to submit adequate evidence to support a disability determination. 20 C.F.R. § 416.912(a)(1); *see Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) ("[I]t is [claimant's] burden to prove at step four that she cannot perform her past relevant work. At the very least, the claimant's failure to provide medical evidence with this information should not be held against the ALJ when there *is* medical evidence that supports the ALJ's decision.") (citations omitted; emphasis in original). Courts in the Eighth Circuit have frequently affirmed a denial of disability benefits where the state agency medical consultant stated that he or she lacked sufficient evidence. *See, e.g.*, *McNary v. Saul*, No. 4:20-CV-545 SRW, 2021 WL 3794208, at *8 (E.D. Mo. Aug. 26, 2021); *Watson v. Astrue*, No. 4:10-CV-877 TIA, 2011 WL 3943787, at *2 (E.D. Mo. Sept. 7, 2011).

Ultimately, an ALJ's decision must be supported by some medical evidence, but not necessarily a specific medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). It appears clear to the Court that the ALJ based the RFC on numerous sources including Dr. Gwartney's persuasive opinion, the extensive medical record which includes thorough observations from Plaintiff's physicians, and Plaintiff's own description of her impairments. *See Strongson*, 361 F.3d at 1070.

<u>Plaintiff's Subjective Pain Complaints</u>

Plaintiff contends that the ALJ's decision lacks a proper pain evaluation. Per 20 C.F.R. § 404.1529, when evaluating disability the SSA will "consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Courts generally analyze the five *Polaski* factors when considering a claimant's subjective descriptions of disabling pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is "not required to discuss each *Polaski* factor." *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (citation omitted).

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical and other evidence in the record." (Tr. at 176). Specifically, the ALJ acknowledged that Plaintiff had "several serious lumbar spine impairments as of February and March of 2017," but determined that Plaintiff could return to work and perform a reduced range of sedentary work within 11 months of her alleged onset date. (*Id.* at 177). In reaching this conclusion, the ALJ considered the objective medical imaging, reports regarding Plaintiff's extremity strength and range of motion, Plaintiff's own description of her pain as moderate, and observations from treating physicians. (*Id.*). The ALJ specifically stated that he considered the available record in accordance with 20 C.F.R. § 404.1529(c)(3). (*Id.*).

Early in his decision, the ALJ summarized Plaintiff's testimony from the hearing regarding her inability to care for herself post-surgery. (*Id.* at 176). While Plaintiff did not complete a Function Report, the ALJ recognized Plaintiff's statement that the pain "did not affect her walking" but did cause her to perform light housework in "short spurts." (*Id.* at 178). But the ALJ also noted

13

that 11 months after surgery Plaintiff was prescribed the "relatively conservative treatment measures" of Gabapentin and physical therapy. (*Id.*). The Eighth Circuit has consistently held that an ALJ may properly discount a claimant's subjective description of their symptoms when the alleged severity is inconsistent with a conservative treatment history. *See, e.g.*, *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998). Ultimately, Plaintiff's conservative treatment contradicts her allegations of disabling pain.

Plaintiff admits that "there might be reason to question her allegations of pain" if physical therapy and Gabapentin were the only treatments offered but notes that she received multiple prescriptions before surgery (and therefore before her last date insured) and eventually underwent a serious procedure. (Doc. 20 at 9-10). The ALJ properly concluded, however, that these more serious treatments were temporal in nature and Plaintiff received conservative treatment post-surgery. Critically, it appears from the medical records that Plaintiff did not seek any medical care whatsoever for her allegedly severe impairments between October 18, 2017 and February 13, 2018, which constitutes nearly one-third of the entire insured period. (Doc. 26 at 10-11; Doc. 20-1 at ¶¶ 12-13).

Plaintiff's brief describes evidence which the ALJ allegedly failed to consider, such as other objective imaging findings and Plaintiff's activities of daily living. (Doc. 20 at 8-10). But the ALJ thoroughly assessed the relevant medical imaging and Plaintiff's ability to return to her past work as an accounting manager. (Tr. at 179-80). The ALJ also acknowledged that Plaintiff could apparently only perform household chores in "short spurts" but had limited additional information because Plaintiff declined to complete a Function Report. *See* 20 C.F.R. § 416.912(a)(1). While the ALJ must "develop the record fully and fairly," he or she "is not required to discuss every piece of evidence submitted," and an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black*, 143 F.3d at 386 (citations omitted). It

14

appears clear to the Court that the ALJ established the RFC after performing a thorough review of the record and making reasonable determinations regarding Plaintiff's claims of disabling pain. In such circumstances, the Court cannot say that the ALJ's RFC "falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

## VII.   CONCLUSION

After careful consideration, this Court will affirm the decision of the ALJ because such decision is supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018). First, the ALJ properly evaluated relevant information before adopting an RFC adequately supported by medical evidence. Objective medical imaging, observations by treating physicians, Plaintiff's statements to her providers, conservative treatment history, and analysis by the state agency medical consultant all support the RFC. Second, the ALJ performed a proper pain evaluation in accordance with the *Polaski* factors. While the ALJ did not discuss each factor explicitly, he carefully evaluated Plaintiff's allegations of disabling pain in light of the entire record.

The ALJ recognized that Plaintiff had serious lumbar spine impairments in early 2017 requiring surgery. (Tr. at 177). By July 2017, however, Plaintiff was doing "remarkably well" and specifically advised to walk regularly while maintaining an active lifestyle. (*Id.* at 381). The ALJ established an RFC limiting Plaintiff to sedentary work with numerous additional restrictions based on her documented medical history and description of the severity of her symptoms. An impartial VE testified that Plaintiff could perform her prior job as an Accounting Manager or obtain other full-time work in the national economy despite such limitations. (*Id.* at 207-211). Therefore, because the ALJ's opinion is supported by substantial evidence in the record as a whole

and falls within the "available zone of choice," the Court will affirm the decision of the Commissioner. *Papesh*, 786 F.3d at 1131.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint (Doc. 1) is **DISMISSED with prejudice**. A separate Judgment will accompany this Memorandum and Order.

Dated this 11th day of February, 2022.

                                        *John A. Ross*
                                        JOHN A. ROSS
                                        UNITED STATES DISTRICT JUDGE